IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| GE COMMERCIAL FINANCE<br>BUSINESS PROPERTY<br>CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM T. HEARD, JR., individually,<br>and HEARDCO, L.P.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 4:08-cv-00137-CDL |

PLAINTIFF'S MOTION TO STRIKE
DEFENDANTS' REQUESTS FOR JURY TRIAL

COMES NOW, Plaintiff GE Commercial Finance Business Property Corporation

("GE"), pursuant to Fed. R. Civ. P. 39(a)(2) and M.D. Ga. Local Rule 7, and moves this

Court to strike the Requests for Jury Trial filed by Defendants William T. Heard, Jr. and

Heardco, L.P. (collectively, the "Defendants").     The Defendants knowingly and

voluntarily waived the right to a jury trial by agreeing to the jury trial waiver provisions

in the loan documents that the Defendants executed, in exchange for loans in the

aggregate original principal amount of $39,800,000.00, and which are at issue in this

litigation.  The Court should enforce these jury trial waiver provisions and strike the

Defendants' improper requests for a jury trial.  In support of its motion, GE relies upon

the accompanying Memorandum of Law which is incorporated herein by reference.

1

WHEREFORE, GE respectfully requests that the Court (1) strike the Defendants'

Requests for Jury Trial and (2) provide such other and further relief as is just and proper.

Respectfully submitted this 16th day of December, 2008.

GREENBERG TRAURIG, LLP

__/s/ John D. Elrod_____
Ernest L. Greer, Ga. Bar No. 309180
greere@gtlaw.com
Michael Eric Ross, Ga. Bar No. 615190
rossme@gtlaw.com
John D. Elrod, Ga. Bar No. 246604
elrodj@gtlaw.com

Attorneys for Plaintiff GE Commercial
Finance Business Property Corporation

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| GE COMMERCIAL FINANCE BUSINESS PROPERTY CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | **Civil Action No. 4:08-cv-00137-CDL** |
| v. | ) ) ) | |
| WILLIAM T. HEARD, JR., individually, and HEARDCO, L.P., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO
STRIKE DEFENDANTS' REQUESTS FOR JURY TRIAL**

Plaintiff GE Commercial Finance Business Property Corporation ("Plaintiff" or "GE"), pursuant to Fed. R. Civ. P. 39(a)(2) and M.D. Ga. Local Rule 7, hereby submits this memorandum of law in support of its Motion to Strike Defendants' Request for a Trial by Jury.

**I.     INTRODUCTION**

In their Answers and Requests for Jury Trials, the Defendants William T. Heard, Jr. ("Heard") and Heardco, L.P., a Georgia limited partnership ("Heardco", and collectively with Heard, the "Defendants") request a trial by jury on all issues (the "Jury Demands"). The Jury Demands were made in contravention of contractual jury waivers that were knowingly and voluntarily executed by the Defendants and applicable law governing the enforcement of jury waivers in federal diversity cases. Because the Defendants have irrevocably waived their Seventh Amendment rights to jury trials in any dispute arising from the loan transactions at issue in this litigation, the Jury Demands should be stricken.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. The Defendants and GE

Heard began his career in the automobile business in 1958 when he joined his father's automobile dealership in Columbus, Georgia. *See http://www.ajc.com/metro/content/metro/stories/2008/09/28/bill_heard_dealerships.html.* During the ensuing decades, the family's automobile businesses steadily grew to the point that Heard owned and operated fifteen (15) car dealerships in several states, including Nevada, Arizona, Texas, Georgia, and Florida, eventually becoming the largest Chevrolet dealer by volume in the nation. *See id.* Business entities owning the real property on which three of the dealerships are located are Bill Heard Chevrolet Corporation-Orlando, a Florida corporation ("Heard Orlando"), Twentieth Century Land Corporation, a Georgia corporation ("Twentieth Century"), and Heardco, L.P., a Georgia limited partnership ("Heardco", and collectively with Heard Orlando and Twentieth Century, the "Heard Entities"). *See Complaint,* p. 2, ¶6.

Beginning in 2005, GE and Heard entered into a series of transactions in which GE made three separate commercial loans in the aggregate original principal amount of $39,800,000.00 to the Heard Entities (collectively, the "Loans"), to finance certain real property owned by various Heard-controlled entities.[1] The Defendants were represented by counsel in these transactions. Copies of the Defendants' counsel's opinion letters are attached hereto as composite Exhibit A. As part of these transactions, Heard Orlando, Heardco, and Twentieth Century executed promissory notes (respectively, the "Heard

---

[1] A fourth loan, made by General Electric Capital Corporation, financed another Heard-controlled entity's acquisition of a Learjet. That loan is the subject of the lawsuit styled General Electric Capital Corporation v. William T. Heard, Jr., case no. 4:08-cv-00138-CDL, which is also pending before this Court, and in which Heard has also requested a jury trial. The loan documents relating to the aircraft loan are also replete with jury trial waivers, and General Electric Capital Corporation is filing a motion to strike Heard's requests for jury trial in that case, as well.

Orlando Note", the "Heardco Note" and the "Twentieth Century Note" and collectively, the "Notes") and three security deeds in favor of GE.  Heard executed each of these Notes on behalf of the respective borrowers.  In addition, Heard executed personal guaranties wherein he unconditionally agreed to pay GE, upon an uncured default, any amounts owing under the Heard Orlando Note (the "Heard Orlando Guaranty"), the Heardco Note (the "Heardco Guaranty"), and the Twentieth Century Note (the "Twentieth Century Guaranty", and collectively with the Heard Orlando Guaranty and the Heardco Guaranty, the "Guaranties").

1.    **Heard Agreed to a Waiver of Trial By Jury As Part of the Heardco, Heard Orlando and Twentieth Century Transactions**

GE and the Defendants expressly agreed in the Notes and the Guaranties to waive their right to a jury trial.  The waiver provisions are written in all caps, are boldly set forth in a paragraph titled "Waiver of Jury Trial," and are in underlined typeface.  The font size of the document is such that the jury trial waiver provisions can clearly be spotted, and the documents themselves are not abnormally long so that the waivers are buried in the document.  Additionally, the waiver provisions appear just above the signature blocks of the documents, which Heard himself signed.  Specifically, GE and Heard mutually agreed in the Heard Orlando Guaranty to waive their respective rights to a jury trial:

> **WAIVER OF JURY TRIAL.  GUARANTOR(S) AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY WAIVE ANY AND ALL RIGHTS THAT EACH PARTY TO THIS GUARANTY MAY NOW OR HEREAFTER HAVE UNDER THE LAWS OF THE UNITED STATES OF AMERICA OR THE STATE OF FLORIDA, TO A TRIAL BY JURY OF ANY AND ALL ISSUES ARISING DIRECTLY OR INDIRECTLY IN ANY ACTION OR PROCEEDING RELATING TO THIS GUARANTY THE LOAN DOCUMENTS OR ANY**

**TRANSACTIONS CONTEMPLATED THEREBY OR RELATED THERETO. IT IS INTENDED THAT THIS WAIVER SHALL APPLY TO ANY AND ALL DEFENSES, RIGHTS, CLAIMS AND/OR COUNTERCLAIMS IN ANY SUCH ACTION OR PROCEEDING. GUARANTOR(S) UNDERSTANDS THAT THIS WAIVER IS A WAIVER OF A CONSTITUTIONAL SAFEGUARD, AND EACH PARTY INDIVIDUALLY BELIEVES THAT THERE ARE SUFFICIENT ALTERNATE PROCEDURAL AND SUBSTANTIVE SAFEGUARDS, INCLUDING, A TRIAL BY AN IMPARTIAL JUDGE, THAT ADEQUATELY OFFSET THE WAIVER CONTAINED HEREIN.** [Emphasis contained in original.][2]

*See Complaint,* Exhibit C, p.7.

Similarly, GE and Heard mutually agreed in the Twentieth Century Guaranty and the Heardco Guaranty to waive their respective rights to a trial by jury:

**WAIVER OF JURY TRIAL. GUARANTOR(S) AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY WAIVE ANY AND ALL RIGHTS THAT EACH PARTY TO THIS GUARANTY MAY NOW OR HEREAFTER HAVE UNDER THE LAWS OF THE UNITED STATES OF AMERICA OR THE STATE OF GEORGIA, TO A TRIAL BY JURY OF ANY AND ALL ISSUES ARISING DIRECTLY OR INDIRECTLY IN ANY ACTION OR PROCEEDING RELATING TO THIS GUARANTY THE LOAN DOCUMENTS OR ANY TRANSACTIONS CONTEMPLATED THEREBY OR RELATED THERETO. IT IS INTENDED THAT THIS WAIVER SHALL APPLY TO ANY AND ALL DEFENSES, RIGHTS, CLAIMS AND/OR COUNTERCLAIMS IN ANY SUCH ACTION OR PROCEEDING. GUARANTOR(S) UNDERSTANDS THAT THIS WAIVER IS A WAIVER OF A CONSTITUTIONAL SAFEGUARD, AND EACH PARTY INDIVIDUALLY BELIEVES THAT THERE ARE SUFFICIENT ALTERNATE PROCEDURAL AND SUBSTANTIVE SAFEGUARDS, INCLUDING, A TRIAL BY AN IMPARTIAL JUDGE, THAT ADEQUATELY OFFSET THE WAIVER CONTAINED HEREIN.** [Emphasis contained in original.]

*See Complaint,* Exhibit G & K, p.7.

Each of the Guaranties also contains a recital indicating that Heard:

---

[2] Because the Heard Orlando Guaranty and associated loan documents are governed by Florida law, the parties agreed to a waiver of their rights to a jury trial under Florida, rather than Georgia, law.

has reviewed, understood and approved all of the terms and conditions of the Note, the Mortgage and all of the other Loan Documents and all other documents executed in connection with the Loan, including, but not limited to, this Guaranty; [Heard] has been afforded the full and fair opportunity to consult with independent legal counsel of Guarantor's own choice with respect to each and all of such matters and documents and has done so to the extent deemed appropriate by Guarantor.

*See Complaint*, Exhibits C, G & K, p.1.

**2.     Heardco Agreed to a Waiver of a Jury Trial Under the Heardco Note.**

Just as GE and Heard did in the Guaranties, GE and Heardco mutually agreed in the Heardco Note to waive a trial by jury:

**WAIVER OF JURY TRIAL. BORROWER AND PAYEE HEREBY KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY WAIVE ANY AND ALL RIGHTS THAT EACH PARTY TO THIS NOTE MAY NOW OR HEREAFTER HAVE UNDER THE LAWS OF THE UNITED STATES OF AMERICA OR THE STATE OF GEORGIA, TO A TRIAL BY JURY OF ANY AND ALL ISSUES ARISING DIRECTLY OR INDIRECTLY IN ANY ACTION OR PROCEEDING RELATING TO THIS NOTE, THE LOAN DOCUMENTS OR ANY TRANSACTIONS CONTEMPLATED THEREBY OR RELATED THERETO. IT IS INTENDED THAT THIS WAIVER SHALL APPLY TO ANY AND ALL DEFENSES, RIGHTS, CLAIMS AND/OR COUNTERCLAIMS IN ANY SUCH ACTION OR PROCEEDING. BORROWER UNDERSTANDS THAT THIS WAIVER IS A WAIVER OF A CONSTITUTIONAL SAFEGUARD, AND EACH PARTY INDIVIDUALLY BELIEVES THAT THERE ARE SUFFICIENT ALTERNATE PROCEDURAL AND SUBSTANTIVE SAFEGUARDS, INCLUDING, A TRIAL BY AN IMPARTIAL JUDGE, THAT ADEQUATELY OFFSET THE WAIVER CONTAINED HEREIN.** [Emphasis contained in original.]

*See Complaint*, Exhibit I, p. 4.

Additionally, the Heardco Note contains a provision just above the signature block, which was signed by Heard, which states as follows:

**IMPORTANT: READ BEFORE SIGNING.   THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE.** [Emphasis contained in original.]

*See id.*

### B. Heard Orlando, Twentieth Century and Heardco Defaulted Under the Loans.

The Heard Entities have defaulted under the Loans by, among other things, failing to make payments under the Notes and, in the case of Twentieth Century and Heard Orlando, filing for bankruptcy. As a result, on or about October 9, 2008, GE exercised its rights under the Guaranties and provided notice to Heard of the various defaults and demanded payment. Similarly, GE gave Heardco notice of its default with respect to the Heardco Loan, and demanded that Heardco remit to GE all amounts outstanding. The Defendants have refused to honor their obligations and therefore GE filed this action. In their Answers to the Complaint, the Defendants expressly pray for the Jury Demands [Docket Nos. 11 & 13]. Such a jury trial, however, is not available to the Defendants, given the express waivers in the Loan Documents. Defendants' Jury Demands should therefore be stricken.

## III.   LEGAL ARGUMENT

### A. Jury trial waivers are enforceable in a federal court sitting in diversity jurisdiction.

A federal court sitting in diversity jurisdiction applies federal, rather than state, law to determine whether a party is entitled to a jury trial. *See, e.g., Simler v. Conner*, 372 U.S. 221, 222 (1963); *Ford v. Citizens & So. Nat. Bank*, 928 F.2d 1118, 1121 (11th Cir. 1991) ("Even though the 'substantive dimension' of a claim brought in federal court may

be governed by state law, 'the right to a jury trial in federal courts is to be determined as a matter of federal law.'") *Phillips v. Kaplus*, 764 F.2d 807 (11th Cir. 1985) (same); *Willis v. Fournier*, 418 F.Supp. 265, 266 (M.D. Ga. 1976) (same); *Bakrac, Inc. v. Villager Franchise Systems, Inc.*, 2003 WL 25730511, No. 02-23434-CIV at 1 (S.D. Fla. Nov. 3, 2003). ("Federal law governs the right to a civil jury trial in federal court, including a determination as to the applicability and enforceability of a jury waiver clause.").[3]

It is well settled that under federal law that parties may agree to waive the right to a jury trial. *Baylis v. Travellers' Ins. Co.*, 113 U.S. 316, 321 (1885) ("[C]ongress ha[d], by statute, provided for the trial of issues of fact in civil cases by the court without intervention of a jury, only when the parties waive their right to a jury by a stipulation in writing"). For this reason, federal courts routinely enforce jury waiver provisions contained in loan documents and agreements. *See, e.g., Murphy v. Cimarron Mortg. Col*, 2007 WL 294229, No. 8:06-cv-2142-T-24 TBM (M.D. Fla. Jan. 29, 2007); *Belin v. Litton Loan Servicing, LP*, 2006 WL 2061340, No. 8:06-cv-760-T-24 EAJ (M.D. Fla. July 17, 2006); *Bishop v. GNC Franchising, LLC*, 2006 WL 2266251 (W.D. Pa. 2006); *Bakrac, Inc. v. Villager Franchise Systems, Inc.*, supra.

**B.    The Defendants Knowingly and Voluntarily Waived Their Rights to a Jury Trial.**

---

[3] The Defendants may attempt to argue that Georgia state law applies to the issue of whether jury waivers are enforceable. Under Georgia state law, unlike Florida state law, contractual jury waivers are generally not enforceable. *Compare Bank South, N.A. v. Howard*, 264 Ga. 339, 444 S.E.2d 799 (Ga. 1994) (a jury waiver in a guaranty deemed unenforceable under Georgia state law) with *Gelco Corp. v. Campanile Motor Service, Inc.*, 677 So. 2d 952 (Fla. 3rd DCA 1996) (contractual jury waiver held to be enforceable under Florida state law). However, because this action was filed as a diversity action in federal court, Georgia state law is not applicable to the jury waiver issue. *See, e.g., Simler*, 372 U.S. at 222. Moreover, under the express provisions of the Loan Documents, the Heard Orlando loan is governed by Florida law.

The Defendants may nonetheless seek to avoid their jury trial waivers by alleging that they were not entered into knowingly and voluntarily. In the present case, such an argument is disingenuous. Although the Eleventh Circuit has not squarely decided which party has the burden of proof on this issue, *Allyn*, 347 F. Supp. 2d at 1251, at a minimum the party opposing the waiver must "come forward with some evidence that calls the voluntariness of the waiver into question." *Sutter Ins. Co. v. Applied Systems, Inc.*, 2004 WL 161508 at 7 (N.D. Ill. 2004) (citing *Reggie Packing Co. v. Lazere Fin. Corp.*, 671 F. Supp. 571, 573 (N.D. Ill. 1987)); *see also Mellon Bank, N.A. v. Miglin,* 1993 WL 281111 at 11 (N.D. Ill. 1993) (opponent of waiver must produce some proof that calls into question whether the waiver was knowing or voluntary; "[t]o hold otherwise would mean that the party seeking to enforce the waiver would have to anticipate and offer proof to negate every possible objection to the knowing and voluntary nature of the waiver, even if some or all of those objections are never raised"). Here, the Defendants can offer no evidence that their waivers were not entered into knowingly and voluntarily. Indeed, the Loan Documents preclude such a showing.

To determine whether a jury trial waiver was executed knowingly and voluntarily, courts look at five factors: (1) the conspicuousness of the provision in the contract; (2) the level of sophistication and experience of the parties entering into the contract; (3) the opportunity to negotiate terms of the contract; (4) the relative bargaining power of each party; and (5) whether the waiving party was represented by counsel. *Allyn*, 347 F. Supp. 2d at 1252. Not all factors must be present or satisfied for a waiver to be valid. *Id.; see also Murphy*, 2007 WL 294229 at 2 (granting motion to strike jury demand because waiver provision in mortgage was conspicuous, as it was (1) in its own paragraph, (2) in

the same size font as the rest of the document, (3) not considered hidden within the document, and (4) stated in clear and unambiguous language that plaintiffs were waiving their right to a jury).

### 1.    The jury waivers in the loan documents are legible and conspicuous.

It is undisputed that the Defendants and GE mutually agreed to waive their rights to a jury trial in the Guaranties as well as in the Heardco Note. Each of these jury waiver provisions is clearly set forth in a separate, clearly marked paragraph and titled "Waiver of Jury Trial" in bold, all capitals and underlined typeface. These provisions are not buried in a lengthy document, but in documents of 7 pages (in the case of the Guaranties) and 4 pages (in the case of the Heardco Note). The terms of each jury waiver provision are clear and conspicuous, as they were set forth right above Heard's signature block. In total, in relation to the Loans, Heard executed no less than fifteen (15) separate documents which contained jury waiver provisions.

### 2.    The Defendants are sophisticated parties.

The Defendants are clearly sophisticated parties. Heard is a graduate of Auburn University (1956) and currently serves on the Auburn University Foundation Board of Directors. *See https://develop.auburn.edu/aufoundation/board.html.* Moreover, Heard served as Chief Executive Officer of Bill Heard Enterprises, Inc. and its related entities, including Heardco, for several decades, eventually creating a company that had over Two Billion dollars a year in revenue, with dealerships in numerous states. As such, the Defendants unquestionably are sophisticated parties. *See Allyn,* 347 F.Supp. 2d at 1253.

### 3. The Defendants were not forced to accept the terms of the Loan Documents.

Simply because a party does not attempt to negotiate the terms of a contract does not mean he or she was precluded from negotiating a jury waiver provision. *Oei v. Citibank, N.A.,* 957 F. Supp. 492, 523 (S.D.N.Y. 1997) (that form was created by Citibank does not mean waiver or other terms were not negotiable). While the documents at issue were drafted by GE and accepted by the Defendants, there is no evidence to indicate the contract terms were not negotiated.

### 4. The Defendants were not in a disadvantaged bargaining position.

To establish a jury trial waiver was unknowing or involuntary due to inequality of bargaining position, or lack of opportunity to negotiate, the court must find "the sort of extreme bargaining disadvantage needed to render the waiver invalid." *Nat'l Equip. Rental, Ltd. v. Hendrix,* 565 F.2d 255, 258 (2nd Cir. 1977) (finding defendant had no choice but to accept contract in order to obtain badly needed funds). There was not an extreme bargaining disadvantage in this case. At the time of these transactions, Bill Heard Enterprises was one of the largest Chevrolet dealers in the world, and one of the largest dealerships in the country, with annual revenues in excess of Two Billion dollars. As such, there is no indication that the Defendants were under any economic pressure to obtain financing from GE.

### 5. The Defendants were represented by counsel in the loan transactions at issue.

The Defendants were represented by counsel in the loan transactions at issue in this litigation. As evidenced by the opinion letters attached hereto as composite Exhibit A, the Defendants' counsel engaged in a thorough analysis of the legal issues relating to

12

the Loans. Moreover, Heard, a sophisticated businessman who had previously been a party to, or had led his business entities in, numerous loan transactions, indicated on his behalf and on behalf of Heardco that he had reviewed and understood the waivers at issue. *See, e.g.,* Guaranties, p. 1, ¶ D.

## IV.    CONCLUSION

The Defendants freely agreed to the jury waivers contained in the Loan Documents. As such, they should not now be allowed to ask this Court to re-write the provisions of such Loan Documents and thereby ignore their agreements with GE when applicable law provides that jury waiver provisions are enforceable. For the foregoing reasons, the Plaintiff requests that the Court strike the Defendants' Jury Demands and provide such other and further relief as is just and proper.

Respectfully submitted this 16th day of December, 2008.

GREENBERG TRAURIG, LLP

/s/ John D. Elrod
Ernest L. Greer, Ga. Bar No. 309180
greere@gtlaw.com
Michael Eric Ross, Ga. Bar No. 615190
rossme@gtlaw.com
John D. Elrod, Ga. Bar No. 246604
elrodj@gtlaw.com

Attorneys for Plaintiff GE Commercial
Finance Business Property Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of December, 2008, I electronically filed the foregoing document *Plaintiff's Motion to Strike Defendants' Requests for Jury Trial and the Memorandum of Law in Support* of same with the Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record identified below via transmission of Notices of Electronic Filing generated by CM/ECF:

Fife Morris Whiteside, Esq.
P.O. Box 5383
Columbus, GA 31906-0383
whitesidef@mindspring.com

- and -

Steven D. Altmann, Esq.
Najjar, Denaburg, P.C.
2125 Morris Avenue
Birmingham, AL 35203
saltmann@najjar.com

*Counsel for Defendants*

GREENBERG TRAURIG, LLP

_/s/ John D. Elrod_____
Ernest L. Greer, Ga. Bar No. 309180
greere@gtlaw.com
Michael Eric Ross, Ga. Bar No. 615190
rossme@gtlaw.com
John D. Elrod, Ga. Bar No. 246604
elrodj@gtlaw.com

Attorneys for Plaintiff GE Commercial
Finance Business Property Corporation

14

**EXHIBIT A**

# HATCHER · STUBBS
## ATTORNEYS AT LAW

6310-A Bradley Park Drive • Columbus, Georgia 31904
TELEPHONE  706.324.0201 • FAX  706.653.8715
www.hatcherstubbs.com

J. Barrington Vaught
DIRECT DIAL:  706.243.6227
DIRECT FAX:  706.243.5227
jbv@hatcherstubbs.com

April 6, 2007

GE Commercial Finance Business Property Corporation
Middle Market Risk
10900 Northeast Fourth Street, Suite 500
Bellevue, Washington  98004
Attn: Ms. Sonya Jeffcoat

     Re:    Loan No. 6323831-001:  $5,900,000 Loan ("Loan") from GE Commercial Finance Business Property Corporation ("Lender"), to Heardco.L.P., a Georgia limited partnership ("Borrower"), secured by the real property located in Kennesaw, Cobb County, Georgia, commonly known as 964 Barrett Parkway ("Property").

Ladies and Gentlemen:

We are the attorneys for Borrower and for Bill Heard Enterprises, Inc. ("Corporate Guarantor"), and William T. Heard, Jr. (collectively with Corporate Guarantor, "Guarantor"), in connection with the above-captioned Loan. All capitalized terms used in this letter that are not otherwise defined herein shall have the meanings assigned to them in the Loan Documents (as hereinafter defined). In the course of our representation, we have reviewed and examined the loan commitment letter from Lender to Borrower dated February 28, 2007, and accepted by Borrower on February 28, 2007 (as the same may be amended in writing, the "Commitment"), and the following documents executed by Borrower, all dated as of April 6, 2007, unless otherwise indicated, relating to the Loan:

1.    Balloon Promissory Note in the principal face amount of $5,900,000.

2.    Deed to Secure Debt, Security Agreement and Assignment of Leases and Rents (the "Security Deed").

3.    Assignment of Rents and Leases (the "Assignment").

4.    Environmental Indemnity Agreement Regarding Hazardous Substances ("Indemnity").

5.    Security Agreement.

6.    Borrower's Certificate.

422627

7.     Owner's Affidavit

8.     Subordination, Attornment and Lessee-Lessor Estoppel Agreement among Borrower, Lender and Bill Heard at Town Center, LLC (the "Subordination").

We have also reviewed two (2) UCC Financing Statements naming Borrower as debtor and Lender as secured party.

The documents and instruments referred to above are collectively called the "Loan Documents."

In addition, we have reviewed and examined the following documents executed by Guarantor:

1.     Guaranty Agreement; and

2.     Guarantor's Certificates (2).

Guarantor has also executed the Indemnity.

In addition, we have reviewed and examined the following:

1.     The consent of Borrower's general partner(s) and the resolution adopted by the Board of Directors of Corporate Guarantor; and

2.     Originals or copies of organizational and authority documents (including without limitation, as applicable, Borrower's limited partnership agreement and limited partnership certificate and Corporate Guarantor's articles of incorporation, by-laws, all corporate records, and certificates and other statements of government officials) relating to Borrower, Corporate Guarantor, and any entities comprising Borrower or Corporate Guarantor, as well as such other documents, laws, statutes, ordinances, regulations and other matters as we have deemed necessary or advisable in order to enable us to render the following opinions to you and to induce you to make this Loan to Borrower.

Based on the foregoing, it is our opinion that:

1.     Borrower is a limited partnership, duly organized, validly existing and in good standing under the laws of the State of Georgia.

2.     Corporate Guarantor is a corporation, duly organized, validly existing and in good standing under the laws of the State of Georgia.

3.     William T. Heard, Jr. is an individual under no disability or incapacity which would adversely affect the validity or enforceability of his Guaranty.

4.     The execution, delivery and performance by Borrower of the Loan Documents and by Guarantor of the Guaranty and Indemnity and the borrowing and liabilities incurred thereunder (1) have been duly authorized

by all necessary action by the partners of Borrower and by all necessary corporate action of Borrower and Corporate Guarantor, as applicable, (2) do not contravene the terms of the limited partnership agreement, limited partnership certificate, articles of incorporation and by-laws, as applicable, of Borrower and Corporate Guarantor, (3) do not (to the best of our knowledge) require the approval or consent of any trustee or the holders of any indebtedness of Borrower or Guarantor, (4) do not (to the best of our knowledge) contravene any law, regulation, rule or order binding on Borrower or Guarantor, and (5) do not (to the best of our knowledge) contravene the provisions of or constitute a default under any agreement or instrument to which Borrower or Guarantor is a party or by which Borrower, Guarantor or the Property may be bound or affected. All actions, approvals and consents necessary to authorize the execution, delivery and performance of the Loan Documents by Borrower and by Guarantor have occurred or been obtained.

5.  No government approval or filing or registration with any governmental authority (other than the recording of the Security Deed, Assignment, and Financing Statements) is required for the execution, delivery and performance by Borrower or Guarantor of the Loan Documents or in connection with any of the transactions contemplated thereby.

6.  The Loan Documents and Guaranty shall be duly and validly executed and delivered by Borrower and Guarantor, as applicable, in compliance with the laws of the State of Georgia, and constitute legal, valid and binding obligations of Borrower and Guarantor, as applicable, enforceable against Borrower and Guarantor, as applicable, in accordance with their respective terms and provisions.

7.  The Security Deed is in proper form for filing in the records of the Superior Court Clerk for Cobb County, Georgia.

8.  The Financing Statements are in proper form for filing in the records of the Superior Court Clerk for Cobb County, Georgia, and with the Georgia Clerks' Cooperative Index. When filed with the foregoing offices, the Financing Statements will have been duly filed in all places where filing is necessary, and all other or additional acts will have been taken as are necessary to perfect Lender's security interest in all fixtures and personal property collateral described in the Security Deed and the Security Agreement.

9.  There is, to the best of our knowledge, after due inquiry, no private, judicial or governmental action, lawsuit, claim, proceeding, inquiry or investigation pending or threatened which involves Borrower, Guarantor, any of the Loan Documents, the Property or the land on which the Property is located, including but not limited to eminent domain proceedings. In addition, to the best of our knowledge, after due inquiry, no unsatisfied judgments have been entered or returned against Borrower or Guarantor.

10.   To the best of our knowledge, Borrower has not violated any applicable local, state and federal environmental laws, regulations and requirements relating to the Property.

11.   The Loan, as made pursuant to the terms of the Loan Documents, is not usurious under Georgia law.

12.   The Loan Documents will be construed and enforced under the internal laws of the State of Georgia applicable with respect to transactions made and to be performed therein and the laws of the United States applicable to transactions in the State of Georgia (excluding choice-of-law principles).

The opinions expressed in this letter are subject to the following qualifications:

(a) The effect of applicable bankruptcy, insolvency, moratorium, or similar laws affecting the rights of creditors generally;

(b) The effect of rules of law governing specific performance, injunctive relief and other equitable remedies;

(c) That Lender will act in good faith and in a commercially reasonable manner in the enforcement of the Loan Documents;

(d) The effect of the following rules concerning the waiver of rights: (i) Uniform Commercial Code ("UCC") §1-102(3) which provides that obligations of good faith, diligence, reasonableness and care may not be disclaimed in transactions subject to the UCC; (ii) UCC §9-501(3) which limits the enforceability of waivers in connection with a secured party's enforcement of its rights in personal property security; and (iii) decisions which provide that in the federal and state courts a forum selection clause is not binding on the courts;

(e) The effect of general rules of contract law that a manifestation of a choice is one remedy may be a bar to another remedy of the remedies are inconsistent and the other party has materially changed its position in reliance on the choice;

(f) The effect of general rules of tort law and UCC §9-503 which limit the right of a creditor to use force or cause a breach of the peace in the enforcement of the creditor's rights;

(g) The effect of UCC §§9-501 et seq. respecting the sale of disposition of collateral and the availability of a deficiency judgment following a disposition;

(h) The effect of general rules of contract law that limit the enforceability of provision releasing, exculpating or exempting a party from, or requiring indemnification for, liability for action or inaction, to the extent that action or inaction involves gross negligence, recklessness or willful misconduct or, in the case of misrepresentation, negligence;

(i) The effect of general rules of contract law that, where less than all of an agreement is unenforceable, the balance is enforceable only when the unenforceable portion is not essential part of the agreed exchange;

(j) The effect of general rules of contract law which may permit an opportunity for a party who has materially failed to render or offer performance to cure that failure prior to the time the condition can no longer occur, unless permitting a cure would unreasonably hinder making substitute arrangements for performance or the offer of performance on the stated day is important in the circumstances;

(k) That agreements allowing the Lender to set off against special accounts of Borrower may not be enforceable; and

(l) That Article 9 of the UCC does not apply to a transfer in whole or in part of any claim arising out of tort.

In addition to the qualifications set forth above, the opinions set forth herein are also subject to the following qualifications:

We have not made or undertaken to make any investigation of the state of title to the real property or to the personal property constituting the security, or of the filing or recordation of the Financing Statements, and we express no opinion with respect to the title to such real property or personal property;

We express no opinion with respect to the effect of subsequently filed financing statements on the priority of any security interest perfected by the filing of the Financing Statements.

3.      We express no opinion on the perfection or priority of any lien or security interest.

4.      This Opinion Letter is limited by, and is in accordance with, the October 15, 1997, edition of the Interpretive Standards applicable to Legal Opinions to Third Parties in Georgia Real Estate Secured Transactions adopted by the Legal Opinion Committee of the Real Property Law Section of the State Bar of Georgia and approved by the Executive Committee of the Real Property Law Section of the State Bar of Georgia, and such Interpretive Standards are incorporated in this Opinion Letter by this reference.

This opinion is given for the benefit of the Lender and any subsequent purchaser or purchasers of the Loan. It is intended that counsel to the Lender may rely on the opinions stated herein.

Very truly yours,

J. Barrington Vaught
For the Firm

JBV/kmw

# HATCHER·STUBBS
## ATTORNEYS AT LAW

6310-A Bradley Park Drive • Columbus, Georgia 31904
TELEPHONE 706.324.0201 • FAX 706.653.8715
www.hatcherstubbs.com

**J. Barrington Vaught**
DIRECT DIAL:  706.243.6227
DIRECT FAX:  706.243.5227
jbv@hatcherstubbs.com

April 6, 2007

GE Commercial Finance Business Property Corporation
Middle Market Risk
10900 Northeast Fourth Street, Suite 500
Bellevue, Washington  98004
Attn: Ms. Sonya Jeffcoat

> Re:   Loan No. 6323732-001:  $15,900,000 Loan ("Loan") from GE Commercial Finance Business Property Corporation ("Lender"), to Twentieth Century Land Corporation, a Georgia corporation ("Borrower"), secured by the real property located in Sandy Springs, Fulton County, Georgia, commonly known as 7200 Roswell Road and 7475 Trowbridge Road ("Property").

Ladies and Gentlemen:

We are the attorneys for Borrower and for Bill Heard Enterprises, Inc. ("Corporate Guarantor"), and William T. Heard, Jr. (collectively with Corporate Guarantor, "Guarantor"), in connection with the above-captioned Loan. All capitalized terms used in this letter that are not otherwise defined herein shall have the meanings assigned to them in the Loan Documents (as hereinafter defined). In the course of our representation, we have reviewed and examined the loan commitment letter from Lender to Borrower dated February 28, 2007, and accepted by Borrower on February 28, 2007 (as the same may be amended in writing, the "Commitment"), and the following documents executed by Borrower, all dated as of April 6, 2007, unless otherwise indicated, relating to the Loan:

1.   Balloon Promissory Note in the principal face amount of $15,900,000.

2.   Deed to Secure Debt, Security Agreement and Assignment of Leases and Rents (the "Security Deed").

3.   Assignment of Rents and Leases (the "Assignment").

4.   Environmental Indemnity Agreement Regarding Hazardous Substances ("Indemnity").

5.   Security Agreement.

6.   Borrower's Certificate.

7.    Owner's Affidavit

8.    Subordination, Attornment and Lessee-Lessor Estoppel Agreement among Borrower, Lender and Tom Jumper Chevrolet, Inc. (the "Subordination").

We have also reviewed two (2) UCC Financing Statements naming Borrower as debtor and Lender as secured party.

The documents and instruments referred to above are collectively called the "Loan Documents."

In addition, we have reviewed and examined the following documents executed by Guarantor:

1.    Guaranty Agreement; and

2.    Guarantor's Certificates (2).

Guarantor has also executed the Indemnity.

In addition, we have reviewed and examined the following:

1.    The resolution adopted by the Board of Directors of Borrower and Corporate Guarantor; and

2.    Originals or copies of organizational and authority documents (including without limitation, as applicable, Borrower's and Corporate Guarantor's respective articles of incorporation, by-laws, all corporate records, and certificates and other statements of government officials) relating to Borrower, Corporate Guarantor, and any entities comprising Borrower or Corporate Guarantor, as well as such other documents, laws, statutes, ordinances, regulations and other matters as we have deemed necessary or advisable in order to enable us to render the following opinions to you and to induce you to make this Loan to Borrower.

Based on the foregoing, it is our opinion that:

1.    Borrower is a corporation, duly organized, validly existing and in good standing under the laws of the State of Georgia.

2.    Corporate Guarantor is a corporation, duly organized, validly existing and in good standing under the laws of the State of Georgia.

3.    William T. Heard, Jr. is an individual under no disability or incapacity which would adversely affect the validity or enforceability of his Guaranty.

4.    The execution, delivery and performance by Borrower of the Loan Documents and by Guarantor of the Guaranty and Indemnity and the borrowing and liabilities incurred thereunder (1) have been duly authorized by all necessary corporate action of Borrower and Corporate Guarantor, as applicable, (2) do not contravene the terms of the articles of incorporation

and by-laws, as applicable, of Borrower and Corporate Guarantor, (3) do not (to the best of our knowledge) require the approval or consent of any trustee or the holders of any indebtedness of Borrower or Guarantor, (4) do not (to the best of our knowledge) contravene any law, regulation, rule or order binding on Borrower or Guarantor, and (5) do not (to the best of our knowledge) contravene the provisions of or constitute a default under any agreement or instrument to which Borrower or Guarantor is a party or by which Borrower, Guarantor or the Property may be bound or affected. All actions, approvals and consents necessary to authorize the execution, delivery and performance of the Loan Documents by Borrower and by Guarantor have occurred or been obtained.

5.     No government approval or filing or registration with any governmental authority (other than the recording of the Security Deed, Assignment, and Financing Statements) is required for the execution, delivery and performance by Borrower or Guarantor of the Loan Documents or in connection with any of the transactions contemplated thereby.

6.     The Loan Documents and Guaranty have been duly and validly executed and delivered by Borrower and Guarantor, as applicable, in compliance with the laws of the State of Georgia, and constitute legal, valid and binding obligations of Borrower and Guarantor, as applicable, enforceable against Borrower and Guarantor, as applicable, in accordance with their respective terms and provisions.

7.     The Security Deed is in proper form for filing in the records of the Superior Court Clerk for Fulton County, Georgia.

8.     The Financing Statements are in proper form for filing in the records of the Superior Court Clerk for Fulton County, Georgia, and with the Georgia Clerks' Cooperative Index. When filed with the foregoing offices, the Financing Statements will have been duly filed in all places where filing is necessary, and all other or additional acts will have been taken as are necessary to perfect Lender's security interest in all fixtures and personal property collateral described in the Security Deed and the Security Agreement.

9.     There is, to the best of our knowledge, after due inquiry, no private, judicial or governmental action, lawsuit, claim, proceeding, inquiry or investigation pending or threatened which involves Borrower, Guarantor, any of the Loan Documents, the Property or the land on which the Property is located, including but not limited to eminent domain proceedings. In addition, to the best of our knowledge, after due inquiry, no unsatisfied judgments have been entered or returned against Borrower or Guarantor.

10.    To the best of our knowledge, Borrower has not violated any applicable local, state and federal environmental laws, regulations and requirements relating to the Property.

11.    The Loan, as made pursuant to the terms of the Loan Documents, is not usurious under Georgia law.

12.    The Loan Documents will be construed and enforced under the internal laws of the State of Georgia applicable with respect to transactions made and to be performed therein and the laws of the United States applicable to transactions in the State of Georgia (excluding choice-of-law principles).

13.    The Property constitutes three separate tax parcels.

The Loan does not violate Georgia Usury laws.

The opinions expressed in this letter are subject to the following qualifications:

(a) The effect of applicable bankruptcy, insolvency, moratorium, or similar laws affecting the rights of creditors generally;

(b) The effect of rules of law governing specific performance, injunctive relief and other equitable remedies;

(c) That Lender will act in good faith and in a commercially reasonable manner in the enforcement of the Loan Documents;

(d) The effect of the following rules concerning the waiver of rights: (i) Uniform Commercial Code ("UCC") §1-102(3) which provides that obligations of good faith, diligence, reasonableness and care may not be disclaimed in transactions subject to the UCC; (ii) UCC §9-501(3) which limits the enforceability of waivers in connection with a secured party's enforcement of its rights in personal property security; and (iii) decisions which provide that in the federal and state courts a forum selection clause is not binding on the courts;

(e) The effect of general rules of contract law that a manifestation of a choice is one remedy may be a bar to another remedy of the remedies are inconsistent and the other party has materially changed its position in reliance on the choice;

(f) The effect of general rules of tort law and UCC §9-503 which limit the right of a creditor to use force or cause a breach of the peace in the enforcement of the creditor's rights;

(g) The effect of UCC §§9-501 et seq. respecting the sale of disposition of collateral and the availability of a deficiency judgment following a disposition;

(h) The effect of general rules of contract law that limit the enforceability of provision releasing, exculpating or exempting a party from, or requiring indemnification for, liability for action or inaction, to the extent that action or inaction involves gross negligence, recklessness or willful misconduct or, in the case of misrepresentation, negligence;

(i) The effect of general rules of contract law that, where less than all of an agreement is unenforceable, the balance is enforceable only when the unenforceable portion is not essential part of the agreed exchange;

(j) The effect of general rules of contract law which may permit an opportunity for a party who has materially failed to render or offer performance to cure that failure prior to the time the condition can no longer occur, unless permitting a cure would unreasonably hinder making substitute arrangements for performance or the offer of performance on the stated day is important in the circumstances;

(k) That agreements allowing the Lender to set off against special accounts of Borrower may not be enforceable; and

(l) That Article 9 of the UCC does not apply to a transfer in whole or in part of any claim arising out of tort.

In addition to the qualifications set forth above, the opinions set forth herein are also subject to the following qualifications:

We have not made or undertaken to make any investigation of the state of title to the real property or to the personal property constituting the security, or of the filing or recordation of the Financing Statements, and we express no opinion with respect to the title to such real property or personal property;

We express no opinion with respect to the effect of subsequently filed financing statements on the priority of any security interest perfected by the filing of the Financing Statements.

3.      We express no opinion on the perfection or priority of any lien or security interest.

4.      This Opinion Letter is limited by, and is in accordance with, the October 15, 1997, edition of the Interpretive Standards applicable to Legal Opinions to Third Parties in Georgia Real Estate Secured Transactions adopted by the Legal Opinion Committee of the Real Property Law Section of the State Bar of Georgia and approved by the Executive Committee of the Real Property Law Section of the State Bar of Georgia, and such Interpretive Standards are incorporated in this Opinion Letter by this reference.

This opinion is given for the benefit of the Lender and any subsequent purchaser or purchasers of the Loan. It is intended that counsel to the Lender may rely on the opinions stated herein.

Very truly yours,

J. Barrington Vaught
For the Firm

JBV/kmw



# SHUTTS
## &
# BOWEN
## LLP

ATTORNEYS AND COUNSELLORS AT LAW

JAMES G. WILLARD
(407) 835-6909 Direct Telephone
(407) 849-7209 Direct Facsimile

E-MAIL ADDRESS:
jwillard@shutts-law.com

December 28, 2005

GE Commercial Finance Business Property Corporation
Middle Market Risk
10900 Northeast Fourth Street, Suite 500
Bellevue, Washington 98004
Attn: Roberta L. Greenway

Re: Loan No. 6321263-001: $18,000,000.00 Loan ("Loan") from GE Commercial Finance Business Property Corporation ("Lender"), to BILL HEARD CHEVROLET CORPORATION-ORLANDO, a Florida corporation ("Borrower"), secured by the real property located in Sanford, Seminole County, Florida, commonly known as 127 N. Oregon Street ("Project").

Ladies and Gentlemen:

We are the attorneys for Borrower, Bill Heard Enterprises, Inc., a Georgia corporation, and William T. Heard, Jr., in connection with the above-captioned Loan. In the course of our representation, we have reviewed and examined the Commitment Letter from Lender to Borrower dated November 17, 2005 and accepted by Borrower on November 21, 2005 (as the same may be amended in writing, the "Commitment"), and the following documents executed by Borrower, all dated as of December 29, 2005, unless otherwise indicated, relating to the Loan:

1. Balloon Promissory Note in the principal face amount of $3,681,558.56.

2. Balloon Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing (the "Mortgage").

3. Note Renewal, Consolidation and Restatement Agreement, evidencing a consolidated indebtedness of $18,000,000.00.

4. Agreement Re Renewal, Consolidation, Restatement and Extension of Mortgages (the "Consolidated Mortgage")

ORLDOCS 10367629 1

300 SOUTH ORANGE AVENUE, SUITE 1000 • P.O. BOX 4956 • ORLANDO, FLORIDA 32802-4956 • TELEPHONE (407) 423-3200 • FACSIMILE (407) 425-8316 • www.shutts-law.com

MIAMI        FORT LAUDERDALE        WEST PALM BEACH        ORLANDO        TALLAHASSEE        AMSTERDAM        LONDON

December 28, 2005
Page 2

5.  Environmental Indemnity Agreement Regarding Hazardous Substances ("Indemnity").

6.  Security Agreement.

7.  Borrower's Certificate.

We have also reviewed two (2) UCC Financing Statements naming Borrower as debtor and Lender as secured party.

The documents and instruments referred to above are collectively called the "Loan Documents."

In addition, we have reviewed and examined the following documents executed by Guarantor:

1.  Guaranty Agreement;

2.  Guarantor's Certificate.

Guarantor has also executed the Indemnity.

In addition, we have reviewed and examined the following:

1.  The resolution adopted by the Board of Directors of each corporation which is signing (either for itself or in a representative capacity on behalf of another party) any of the Loan Documents;

2.  Originals or copies of organizational and authority documents (including without limitation, as applicable, Borrower's and Guarantor's respective articles of incorporation, by-laws, all corporate records, and certificates and other statements of government officials) relating to Borrower, Guarantor, and any entities comprising Borrower or Guarantor, as well as such other documents, laws, statutes, ordinances, regulations and other matters as we have deemed necessary or advisable in order to enable us to render the following opinions to you and to induce you to make this Loan to Borrower.

We have assumed, in rendering the opinions expressed herein, without independent investigation, (a) the genuineness of all signatures on the Loan Documents, (b) the due execution and delivery of the Loan Documents by all parties not witnessed by us, (c) the legal capacity of natural persons, (d) the authenticity and completeness of all documents submitted to us as originals, (e) the conformity to original documents of all documents submitted to us as certified

December 28, 2005
Page 3

or photostatic (or similarly reproduced) copies, and (f) the conformity to executed documents of all documents submitted to us as drafts.

Whenever an opinion with respect to the existence or absence of facts is qualified by the phrase "to the best of our knowledge," it is intended to indicate that during the course of our representation of Borrower, no information has come to our attention that would give us actual knowledge of such facts. Although nothing has come to our attention leading us to question, or giving us reasonable grounds to question, the accuracy of such information, we have not (except for our review of the Loan Documents) undertaken any independent review or investigation to determine the existence or absence of such facts.

Based on the foregoing, it is our opinion that:

1. Borrower is a corporation, duly organized, validly existing and in good standing under the laws of the State of Florida. Bill Heard Enterprises, Inc. is a corporation duly organized, validly existing, and in good standing under the laws of the State of Georgia.

2. The execution, delivery and performance by Borrower of the Loan Documents and by Guarantor of the Guaranty and Indemnity and the borrowing and liabilities incurred thereunder (1) have been duly authorized by all necessary partnership, member, or corporate action of Borrower and Guarantor, as applicable, (2) do not contravene the terms of the articles of incorporation, certificates of incorporation, or by-laws of Borrower or Guarantor, (3) do not (to the best of our knowledge) require the approval or consent of any trustee or the holders of any indebtedness of Borrower or Guarantor, (4) do not (to the best of our knowledge) contravene any law, regulation, rule or order binding on Borrower or Guarantor, and (5) do not (to the best of our knowledge) contravene the provisions of or constitute a default under any agreement or instrument to which Borrower or Guarantor is a party or by which Borrower, Guarantor or the Project may be bound or affected. All actions, approvals and consents necessary to authorize the execution, delivery and performance of the Loan Documents by Borrower and by Guarantor have occurred or been obtained.

3. No government approval or filing or registration with any governmental authority (other than the recording of the Mortgage, Consolidated Mortgage, and Financing Statements) is required for the execution, delivery and performance by Borrower of the Loan Documents or in connection with any of the transactions contemplated thereby.

4. The Loan Documents and Guaranty have been duly and validly executed and delivered by Borrower and Guarantor, as applicable, in compliance

December 28, 2005
Page 4

with the laws of the State of Florida, and constitute legal, valid and binding obligations of Borrower and Guarantor, as applicable, enforceable against Borrower and Guarantor, as applicable, in accordance with their respective terms and provisions.

5.  The Mortgage and Consolidated Mortgage are in proper form for filing in the records of the Clerk of the Circuit Court for Seminole County, Florida.

6.  The Financing Statements are proper form for filing in the records of the Clerk of the Circuit Court for Seminole County, Florida, and with the Secretary of State for the State of Florida. When filed with the foregoing offices, the Financing Statements will have been duly filed in all places where filing is necessary, and all other or additional acts will have been taken as are necessary to perfect Lender's security interest in all fixtures and personal property collateral described in the Mortgage and the Security Agreement.

7.  There is, to the best of our knowledge, after due inquiry, no private, judicial or governmental action, lawsuit, claim, proceeding, inquiry or investigation pending or threatened which involves Borrower, Guarantor any of the Loan Documents, the Project or the land on which the Project is located, including but not limited to eminent domain proceedings. In addition, to the best of our knowledge, after due inquiry and a search of the court records in Seminole County, Florida, no unsatisfied judgments have been entered or returned against Borrower.

8.  To the best of our knowledge, Borrower has not violated any applicable local, state and federal environmental laws, regulations and requirements relating to the Project.

9.  The Loan, as made pursuant to the terms of the Loan Documents, is not usurious under Florida law.

10. The Loan Documents and Guaranty will be construed and enforced under the internal laws of the State of Florida applicable with respect to transactions made and to be performed therein and the laws of the United States applicable to transactions in the State of Florida (excluding choice-of-law principles).

11. The Project constitutes separate legal lot(s), and no subdivision or partition proceedings will be necessary in order to convey the Project in the event of any foreclosure under the Consolidated Mortgage.

12. The Project constitutes separate tax parcel(s).

December 28, 2005
Page 5

The foregoing opinions expressed are subject to the following qualifications and limitations:

(i)     We have not made any investigation and do not express an opinion as to matters of the priority of liens, security interests and other encumbrances created by the Loan Documents. Opinions relating to the creation, attachment and perfection of liens or security interests (and the enforceability thereof) are given subject to the assumption that Borrower holds, at all relevant times, rights in the property that is the subject of the purported grant of a lien or security interest, and that such rights are of such nature and character as are required to render the grant of such lien or security interest effective. We have assumed that, as to matters of title and priority with respect to the real property encumbered by the Consolidated Mortgage, that Lender is relying upon a commitment to issue title insurance issued by a title issuer licensed to transact business in the State of Florida.

(ii)    The validity, binding effect and enforceability of the Loan Documents and the Guaranty may be limited or otherwise affected by (A) bankruptcy, insolvency, reorganization, equitable subordination, moratorium, fraudulent conveyance or other similar statutes, rules, regulations or other laws affecting the enforcement of creditors' rights and remedies generally, and (B) the unavailability of, or limitation on the availability of, a particular right or remedy (whether in a proceeding in equity or at law) because of an equitable principle or a requirement as to commercial reasonableness, conscionability or good faith. In addition, certain waivers and other provisions in the Loan Documents may not be upheld or enforced by a court in each circumstance; nevertheless, the unavailability of certain remedies, waivers or other provisions will not render the Loan Documents invalid as a whole or preclude (X) the judicial enforcement of the obligation of Borrower to repay the principal, together with interest thereon (to the extent not deemed a penalty), (Y) acceleration of the obligation of Borrower to repay such principal, together with such interest, upon a material default by Borrower in the payment of such principal or interest or upon a material default in any other material provision of the Loan Documents by Borrower, and (Z) foreclosure on the property described in the Loan Documents in accordance with applicable law upon acceleration pursuant to clause (Y) above.

We are licensed to practice law in the State of Florida. The opinions expressed herein are limited to the laws of, and all references to "laws" herein are intended to refer only to the laws of, the United States and the State of Florida.

The opinions expressed herein are intended solely for the benefit of Lender and any subsequent purchasers of the Loan and can be relied upon by Lender and its counsel. This opinion letter and the opinions expressed herein are not to be furnished, quoted or referred to by any other person or entity without our prior written consent. The opinions expressed herein are as of the date of this letter and we do not purport to analyze, evaluate or consider the legal effect of any event subsequent to the date hereof which may alter the validity of any opinion expressed herein. We undertake no obligation, and disclaim any duty, to advise you of any facts, events,

December 28, 2005
Page 6

statutes, ordinances, rules or regulations which may come to our attention subsequent to the date
of this letter that may affect the opinions expressed herein.

Very truly yours,

SHUTTS & BOWEN LLP

By: _____
James G. Willard, Partner

JGW/lkn

ORLDOCS 10367629 1